THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM EUGENE BROWN, Plaintiff in Error.

*Opinion filed April 18, 1912—Rehearing denied June 6, 1912.*

1. PERJURY—*there are two ways of averring materiality of testimony.* An indictment for perjury may set out the false testimony and then aver that it was material to the issue then being tried, or it may so state the issue being tried and the matters sworn to in which it is alleged the perjury was committed, that the court, from the facts averred, can see that the false testimony was material.

2. SAME—*rule as to averring materiality of the testimony in a prosecution for attempt to incite another to commit perjury.* The rule as to averring the materiality of the testimony to the issue being tried is the same in an indictment for endeavoring to incite another to commit perjury as in an indictment for perjury itself, and if the averments of the indictment are sufficient in that respect as to the latter offense they are sufficient as to the former.

3. TRIAL,—*cross-examination tending to show that witness was not of chaste character is improper.* Where a female witness testifies to the conversation upon which the charge against the defendant of endeavoring to incite another to commit perjury is based, a cross-examination which is intended solely to defame the witness by showing her to be unchaste is both improper and reprehensible, particularly where the defendant is a lawyer and is conducting his own defense.

4. The court considers the indictment in this case, and holds that it sufficiently shows that the false testimony the defendant endeavored to incite another to give was material to the issue then being tried, and holds, further, that the evidence in this case justifies the verdict and the judgment of conviction based thereon.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. WILLARD M. Mc-EWEN, Judge, presiding.

The plaintiff in error was convicted in the criminal court of Cook county of the crime of endeavoring to incite or procure one Charles T. Haas to commit the crime of perjury by swearing falsely in a certain disbarment proceeding then pending in this court against the plaintiff in error, and which had been referred to G. Fred Rush, a master in chancery of Cook county, as special commissioner, to take the testimony and report the same to this court, with his conclusions, to the effect that he, the said Charles T. Haas, knew one William H. Barton, or Billy Barton, and that said Barton had been in his employ as a detective, and that he had seen in the possession of said Barton a certain check for the sum of $3850, and that Barton had gone to Kansas City to locate one C. A. Nelson, who had drawn said check upon the Commercial National Bank of Chicago in favor of the plaintiff in error, when the plaintiff in error and said Haas each well knew that he, the said Haas, did not know said Barton and had not employed him as a detective, had not seen said check in his possession and that said Barton had not gone to Kansas City to locate said Nelson, and that

said false testimony was material to the issue involved in said disbarment proceeding. The plaintiff in error entered a plea of not guilty, and upon a trial before the court and a jury a verdict was returned into court finding him guilty, upon which verdict the court, after overruling a motion in arrest of judgment, sentenced him to the house of correction for one year and fined him $100 and costs. He has sued out a writ of error from the Appellate Court for the First District to review said judgment of conviction, by which court said judgment was affirmed.

The indictment contained two counts. The first count charged that certain judicial proceedings were pending in this court for the disbarment of the plaintiff in error from further practicing as an attorney at law; that he had filed an answer to the information charging him with unprofessional conduct, and that said proceeding had been referred to G. Fred Rush, a master in chancery of Cook county, as a special commissioner, to take and report the evidence, with his conclusions, to this court in said proceeding; that it became and was material to the issue in said proceeding to inquire and determine whether there was such a person as William H. Barton, or Billy Barton, a detective, and whether the plaintiff in error had given to said Barton a check for $3850; that while said proceeding was about to be heard by said master, pursuant to the order of this court, the plaintiff in error did unlawfully and corruptly, etc., endeavor to incite and procure one Charles T. Haas to commit perjury before said master in said proceeding, and did unlawfully, etc., endeavor to solicit and entice, etc., the said Haas to appear as a witness before said master and take oath and testify that he, said Haas, knew said Barton, etc., and had employed him as a detective, etc.; that Haas had been shown a check for $3850, signed by C. A. Nelson; that Barton had then gone to Kansas City to locate said Nelson, the drawer of said check; that in truth and in fact the plaintiff in error and said Haas well knew that Haas

did not know said Barton and had not employed him as a
detective; that said Barton did .not show Haas a check for
the sum of $3850, or any other amount, signed by Nelson;
that said Barton had not gone to Kansas City to locate Nel-
son, the drawer of said check; that the plaintiff in error
did, in manner aforesaid, unlawfully, etc., attempt and en-
deavor to incite and procure the said Haas to commit per-
jury, etc.

The second count sets out the pendency of the disbar-
ment proceeding, the filing of an answer by the plaintiff
in error and the reference to the master, and then sets out
the information and the answer in the disbarment proceed-
ing in full, from which it appears that the plaintiff in error
was practicing law in the city of Chicago under a license
issued by this court; that he opened an account in the name
of Brown & Oakley (Oakley being a resident of the State
of Kansas) with the American Trust and Savings Bank of
Chicago; that he deposited a check with said bank which
purported to be drawn upon the Commercial National Bank
of Chicago by one C. A. Nelson but who was a fictitious
person; that said check was thrown out by the clearing
house, and upon its return to the American Trust and Sav-
ings Bank plaintiff in error gave his check for the amount
thereof and obtained possession of the check drawn in the
name of Nelson, pretendedly for the purpose of adjusting
the matter with Nelson; that he thereafter refused to re-
turn the Nelson check to the American Trust and Savings
Bank and claimed to have given the same to William H.
Barton, or Billy Barton, a detective, and that Barton had
left the city of Chicago and gone to Kansas City with the
check for the purpose of locating Nelson; that it was the
claim of the plaintiff in error that he had acted in the ut-
most good faith in his dealings with the American Trust
and Savings Bank in depositing said check and that he sup-
posed the check of Nelson was good, and it became material
to inquire and determine in the said disbarment proceeding

whether the plaintiff in error acted in good faith at the time
he deposited said check, and as bearing upon that question
it was material to show that Barton and Nelson were ficti-
tious persons, that the plaintiff in error had not delivered
said check to Barton and that Barton had'not gone to Kan-
sas City to locate Nelson; that when the hearing in the
disbarment proceeding was about to begin before the mas-
ter, the plaintiff in error did endeavor to incite and procure
one Charles T. Haas to commit perjury by falsely testifying
that he knew Barton, that Barton had been in his employ
as a detective, that he had seen the Nelson check for $3850
in Barton's possession and that Barton had gone to Kansas
City to locate Nelson, whereas, in truth and in fact, said
testimony was false, as the plaintiff in error and Haas each
well knew; and so the jurors say that the plaintiff in error
then and there unlawfully did attempt and endeavor to in-
cite and procure Charles T. Haas to commit perjury, etc.

The section of the Criminal Code upon which the prose-
cution was founded reads as follows: "Whoever endeav-
ors to incite or procure any other person to commit perjury,
though no perjury is committed, shall be imprisoned in the
penitentiary not less than one nor more than five years, or
confined in the county jail not exceeding one year, and fined
not exceeding $1000." (Hurd's Stat. chap. 38, sec. 228.)

CLARENCE T. MORSE, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAY-
MAN, State's Attorney, and CHAS. E. WOODWARD, (E. C.
HALL, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the indictment is insufficient be-
cause it is not shown therein, or in either count thereof, by
proper averment, that the testimony which the plaintiff in
error endeavored to incite or procure Charles T. Haas to

give in the disbarment proceeding was material to the issue
involved in that proceeding. It is well settled in this State
that there are two methods of averring the materiality of
the testimony upon which the perjury is assigned. One
method is to set out the false testimony and then to aver
that it was material to the issue then being tried; and the
other is, to so state the issue being tried, and the matters
sworn to in which it is alleged the perjury was committed,
that the court, from the facts averred in the indictment,
can see that the false testimony was material. (*Kimmel* v.
*People,* 92 Ill. 457; *Greene* v. *People,* 182 id. 278; *Kizer*
v. *People,* 211 id. 407; *People* v. *Threewitt,* 251 id. 509.)
The last expression of this court upon the subject is found
in the *Threewitt case,* on page 511, where it is said: "The
indictment stated that the testimony of plaintiff in error
alleged to be false was material to the issue on the trial of
said cause, and it was not necessary that the allegations of
the indictment should show wherein said testimony became
material. In *Kizer* v. *People,* 211 Ill. 407, the court said:
'The authorities are agreed that there are two methods of
averring the materiality of the testimony upon which the
perjury is assigned, in common use and recognized in prac-
tically all the courts of this country and of England, and
are, first, that without setting out all the facts from which
the court may see the materiality of the evidence, the par-
ticular matter or testimony is set out with the averment of
the pleader that it was material; or, second, the pleader
may so state the issues and the matters sworn to in which it
is alleged the perjury is committed, that the court, from the
averment of the facts testified about and the nature of the
cause in which the testimony was given, can see that the
testimony was material.' The same doctrine is announced
in *Greene* v. *People,* 182 Ill. 278; *Kimmel* v. *People,* 92 id.
457; *Pollard* v. *People,* 69 id. 148."

The first count of the indictment charged, in express
terms, that the false testimony which the plaintiff in error

endeavored to incite or procure Charles T. Haas to give before the master in the disbarment proceeding was material to the issue then being tried, and the false testimony was fully set out in that count of the indictment; and the second count set out the information in the disbarment proceeding and the answer of the plaintiff in error, from which it appeared what the issue was that was to be tried in that proceeding, and from which it appeared that the false testimony which the plaintiff in error endeavored to incite or procure Charles T. Haas to give before the master was material to the issue made by the pleadings in the disbarment proceeding. It is manifest that under the rule of criminal pleading in force in this State in prosecutions for perjury, each count of the indictment would have been a good indictment for the crime of perjury against the plaintiff in error had he been charged directly with the crime of perjury, and if the averments of the indictment would have been sufficient in such case, we think that the materiality of the testimony of Charles T. Haas was sufficiently shown by the indictment, as against the plaintiff in error, for having endeavored to incite and procure the witness Haas to commit perjury. Our conclusion is that each count of the indictment was sufficient.

It is next contended that the facts that William H. Barton was known to Haas, that he had worked for Haas as a detective, that he had shown Haas a check for $3850 signed by Nelson, and that he had taken the check and gone to Kansas City to locate Nelson, were wholly immaterial in the disbarment proceeding, and that the plaintiff in error could not be properly convicted of endeavoring to incite and procure Haas to swear falsely to those facts in that proceeding by reason of the want of the materiality of the testimony. We cannot agree with the contention that the testimony of Haas that he had known Barton, that he had worked for Haas as a detective, that Barton had shown him a check signed by Nelson for $3850, and that Barton

had gone to Kansas City with the check to locate Nelson, if true, would not have been material to the issue being tried in the disbarment proceeding. It was there contended by the People that there was no such person as Barton or Nelson; that the check for $3850 purporting to be signed by Nelson was spurious, and was drawn by plaintiff in error and placed in the American Trust and Savings Bank by him after clearance hours for the purpose of giving him a fictitious credit in said bank, against which he might draw before it was discovered that the check was worthless, and that when he got the check into his possession he fraudulently concealed it with a view to cover up his wrong; while it was claimed by the plaintiff in error that Nelson gave him said check in the due course of business, that it was deposited in the American Trust and Savings Bank in the name of Brown & Oakley in the utmost good faith, and that it was delivered by plaintiff in error to Barton after it was received by plaintiff in error from the bank. It would therefore seem to be material in that proceeding to establish that Barton, to whom it was claimed by plaintiff in error the check was delivered, was not a fictitious person; that he was known to Haas, who had employed him as a detective, and that he had the check signed by Nelson in his possession at the place of business of Haas, and that he had gone to Kansas City with the check to locate Nelson, as such testimony would have clearly corroborated the testimony of the plaintiff in error that the check was the check of Nelson, and that he had in good faith delivered the check to Barton and was unable to produce the same by reason of the absence of Barton. The question of the materiality of this testimony in the disbarment proceeding was disposed of when the opinion was filed by this court in that case. (*People* v. *Brown*, 218 Ill. 301.) In the disbarment proceeding Haas was called as a witness and fully testified to the fact that the plaintiff in error had sought to suborn him to commit perjury before the master in that proceeding,

and it was sought to exclude the testimony of Haas on the ground that it was immaterial. In disposing of that question, on page 308 of the opinion, this court said: "At the hearing Mr. Haas was called upon the stand by respondent, and to respondent's surprise stated that he never did know Barton, and later gave a full detail of the attempt and agreement on the part of respondent to suborn him and his two clerks, and in this he was corroborated by three of the clerks and other circumstances. Respondent insisted that this evidence was incompetent and asked to have it stricken and now insists that it should not be considered. In this contention respondent is in error, as it is in the nature of an admission on his part that there was no such person as William H. Barton in any manner really connected with that transaction, and that in order to make his defense it was necessary that it should falsely appear that such party did exist and was concerned in the transaction." We are of the opinion the evidence that the plaintiff in error sought to suborn Haas to testify falsely before the master in chancery that he knew Barton, that Barton had worked for him as a detective, that Barton had shown Haas a check for $3850 signed by Nelson, and that Barton had gone to Kansas City with the check to locate Nelson, was material in the disbarment proceeding and was properly admitted on the trial of this case.

It is next urged that the court erred in improperly restricting the cross-examination of Charles T. Haas and Mabel Starek. Charles T. Haas was engaged in carrying on a detective agency in the city of Chicago and had been for some years prior to the trial in the disbarment proceeding. Mabel Starek was a stenographer in his office, and was present, with other witnesses, and heard the conversation between Haas and plaintiff in error, when the latter, for the consideration of $200, sought to employ Haas and certain of his operatives to make proof that they knew Barton, that he had been in the employ of Haas as a detective,

that he had shown them a $3850 check signed by Nelson, and that he had gone to Kansas City to locate Nelson. Haas and Mabel Starek were sworn and testified on the trial in this case, and the plaintiff in error, who conducted his own defense, on the cross-examination of Haas as well as of Mabel Starek, sought to disgrace the witness Starek by asking each of said witnesses, on the cross-examination, questions which sought to break down and destroy her character for chastity. The cross-examination was foreign to the case and was wholly excluded by the court, and it is now urged the judgment of conviction should be reversed by reason of the refusal of the trial court to permit the said witnesses to be cross-examined upon the subject of the chastity of the witness Starek. In *Toledo, Wabash and Western Railway Co.* v. *Williams,* 77 Ill. 354, Mr. Justice Scholfield, on page 359, used the following language: "Objection was taken to a number of questions put by appellee's counsel, in cross-examination, to a witness of the appellant. These objections should have been sustained. The questions were objectionable in form, irrelevant to the issue, and only tended to bully and degrade the witness. A witness cannot be impeached in this way. A wide latitude is allowed in the cross-examination of a witness, but he is entitled to be protected by the court from unnecessary insult and abusiveness by counsel." It is apparent from this record that the only object of the cross-examination of the said witnesses, especially of the witness Mabel Starek, was to insult and humiliate her, and such conduct on the part of counsel, or on the part of a party who is representing himself in the trial of a case, is reprehensible in the highest degree and deserves the strongest condemnation of the court, and if such misconduct is repeated after the court had ruled, as it was here, it should be punished.

It is further objected that the counsel for the People abused the privilege of argument. The criticism, to some extent, is perhaps merited, but the action of counsel for

the People in the particular complained of was largely due, we think, to the manner in which the plaintiff in error conducted his own defense. The plaintiff in error had been a lawyer and was familiar with court proceedings and the rules governing the conduct of a suit such as the one at bar. He should therefore have confined himself within the rules of propriety. We are of the opinion that the judgment in this case ought not to be reversed by reason of anything that occurred during the argument of the case before the jury.

It is finally contended that the evidence is not sufficient to support the verdict. A certified copy of the information and the answer in the disbarment proceeding were introduced in evidence, which showed the issues in the case and the materiality of the false testimony which the plaintiff in error had endeavored to induce or procure Charles T. Haas to give before the master in said proceeding. Three witnesses testified to the facts which show that the plaintiff in error endeavored to incite or procure the witness Haas to give false testimony before the master to the effect that William H. Barton was known to him, that Barton had worked for him as a detective, that Barton had shown to him a check for $3850 signed by Nelson, and that Barton had taken the check and gone to Kansas City to locate Nelson. That testimony was uncontradicted except by the testimony of plaintiff in error, and a large number of the bar in the city of Chicago testified upon this trial that he was a man whose reputation for truth and veracity was bad and whom they would not believe under oath. We think the verdict, and the judgment of conviction based thereon, were fully justified by the evidence.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*